UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

JESSICA DAVIS, ET AL.                    CIV. ACTION NO. 3:23-01056

VERSUS                                   JUDGE TERRY A. DOUGHTY

TAMMY LEE, ET AL.                        MAG. JUDGE KAYLA D. MCCLUSKY

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned magistrate judge, on reference from the District Court, are three pending motions:   (1) a motion to dismiss [doc. # 12] for lack of subject matter and personal jurisdiction, insufficient service of process, and for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(1), (2), (5), & (6), filed by Defendant, the City of Monroe; (2) a motion to dismiss [doc. # 16] for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(1) & (6), filed by Defendant, Judge Tammy Lee; and (3) a motion to dismiss [doc. # 19] for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(6), filed by Defendant, Elizabeth Brown.   The motions are opposed.   For reasons assigned below, IT IS RECOMMENDED that the motions be GRANTED IN PART and DENIED IN PART.

<u>Background</u>

I.      **The Pleadings**

On August 9, 2023, Plaintiffs Jessica Davis ("Davis") and Thomas Head ("Head") filed the instant pro se complaint against Defendants Monroe City Court Judge Tammy Lee ("Judge Lee") and their minor daughter's attorney, Elizabeth Brown ("Brown" or "attorney Brown").   (Compl. [doc. # 1]).   Judge Lee is the presiding judge of an ongoing child custody proceeding in the Monroe

City Court involving Davis and Head's minor daughter, E.D., and the Louisiana Department of Children & Family Services ("DCFS"). *Id.* E.D. has been residing with Davis and Head full-time since early 2023, and they hope to maintain custody of her.[1] *Id.*

According to the Complaint and the attached exhibits, Davis and Head were diagnosed with Opioid Use Disorder and take Suboxone that was prescribed to them pursuant to a Medication Assisted Treatment plan. *See* Compl., and Exhs. However, Brown and Judge Lee raised concerns about the Suboxone prescription. *Id.* As a result, Judge Lee subpoenaed Davis and Head's medical providers to appear at a hearing, whereupon she and Brown asked them many questions, including some that Davis and Head considered "inappropriate." *Id.* Apparently, the providers did not assuage Judge Lee's concerns because she ordered Davis and Head to be evaluated by a medical doctor and set the matter for subsequent hearing on September 19, 2023. *Id.*

Davis and Head alleged that the Americans with Disabilities Act ("ADA") "recognizes addiction as a disability and offers protections." *Id.* They also stated that attorney Brown purportedly had a conflict of interest, which was raised on April 12, 2022, in a separate proceeding involving I.B., who is another one of Head's children. *Id.* Further, on several occasions, Judge Lee and Brown have "brought up" the 2022 child custody case involving I.B., despite the fact that a DCFS attorney had promised Head that nothing in that matter could be brought up in any other DCFS case in exchange for Head agreeing to sign over his parental rights to I.B. *Id.*

On September 7, 2023, the Court reviewed the Complaint and noted that the pleading failed to comply with Rule 8(a). (Order [doc. # 7]). The undersigned further noted that Davis and Head's claims against Judge Lee appeared to be barred by judicial immunity and that individual

---

[1] In their Complaint, Davis and Head indicated that E.D. has been in their custody since January of 2023, but in their Amended Complaint, they assert that she was returned to their custody on or about February 6, 2023.

defendants could not be held liable personally for violations of Title II of the ADA.    *Id*.

Accordingly, the court ordered Davis and Head to amend their complaint to describe the specific

conduct of each    Defendant that formed the basis for their claims and to explain how the specific

violations caused Davis and Head to suffer an injury that could be addressed by the lawsuit.    *Id*.

On September 20, 2023, Davis and Head filed their amended complaint.    (Amend. Compl.

[doc. # 8]).    Head alleged that, on February 25, 2022, he went to court in I.B.'s DCFS case

whereupon his attorney, Bobby Manning, told him that if he gave up his rights to his son then his

son's case would not be used against him in his daughter's case.    *Id*.    Likewise, DCFS attorney,

Kesha Bordelon, told the court that the judgment would not be used against him with any future

children.    *Id*.

On April 12, 2022, attorney Allie Cooper told the court in the I.B. matter that there was a

conflict of interest with the child's attorney.    *Id*.    Brown was I.B.'s attorney, and now she is E.D.'s

attorney.    *Id*.

On April 22, 2022, Head received a case plan and had to go to rehab and parenting classes for

his daughter's case, even though he had no drugs in his system and had been clean for "awhile."    *Id*.

On September 20, 2022, Davis and Head returned to court, and Judge Lee ordered that the

child be continued in custody with the goal of reunification.    *Id*.

On December 6, 2022, Davis and Head went back to court after completing their case plan.

*Id*.    However, DCFS case worker, Amanda Marcel, asked the court to extend reunification for 90

days, so E.D. could be transitioned to Davis and Head's home to see how they did with her.    *Id*.

Judge Lee was on the cusp of returning custody to Davis and Head, but then Brown told Judge Lee

about I.B.'s case and how Head had failed a drug screen.    *Id*.    Davis and Head contend that Brown

broke the contract that prohibited I.B.'s case from being used in any other child custody proceeding.

*Id*.    If it had not been for the conflict of interest and the breach of contract, E.D. would have been returned to Davis and Head's custody.    *Id*.    Nonetheless, E.D. was returned to Davis and Head's home on February 6, 2023.    *Id*.

Davis and Head returned to court on March 7, 2023, at which time DCFS case worker, Amanda Marcel, stated that she had no concerns with E.D.'s placement in the home.    *Id*.    Judge Lee, however, denied DCFS's request for E.D. to be returned on a permanent basis to Davis and Head because of Davis and Head's prescription for Suboxone.    *Id*.

On April 21, 2023, Judge Lee ordered Davis and Head's medical providers to attend a hearing on June 27, 2023, to discuss their prescription for Suboxone    *Id*.

On June 27, 2023, Head, Davis, and their nurse practitioner attended a hearing before Judge Lee who proceeded to ask the provider "a bunch of inappropriate questions."    *Id*.    Judge Lee directed Davis and Head to see another doctor and set the next court date for September 19, 2023.    *Id*.    Davis and Head were required to pay $240 each to see the doctor, who advised them that it was against the law for the judge not to return their daughter to them because of their prescribed Suboxone treatment.    *Id*.    The physician added that he was going to "turn [the judge] in," if she failed to return E.D. to Davis and Head's custody.    *Id*.

On September 19, 2023, Davis and Head appeared at court, but their case was not called.    *Id*.    DCFS case worker, Amanda Marcel, explained to them that their case was not called because "they forgot to send out new court dates," and the new court date was December 19, 2023.    *Id*.    Meanwhile, Davis had become "preg[nant] again," and Amanda Marcel stated that they (presumably DCFS) intended to open a case on their unborn daughter.    *Id*.

Davis and Head stressed that they have been clean for two years and have done everything that DCFS has asked them to do.    *Id*.    They do not understand why DCFS is harassing them, and

they would like to press charges against DCFS for harassment.  *Id.*  Davis and Head noted that a different judge returned custody of Davis's "little boy."  *Id.*  Davis and Head contend that Judge Lee and attorney Brown continued their case until December in retaliation for filing this lawsuit against them.  *Id.*  Likewise, the DCFS retaliated by threatening to open a new case against them related to their unborn child.  *Id.*

In response to this court's explanation that there was no individual liability for violations of Title II of the ADA, Davis and Head stated that they wanted to amend their suit to add the City of Monroe as a Defendant.  *Id.*

Davis and Head prayed for the following relief:

- $100,000 and reversal of the adoption of Head's son I.B., stemming from the breach of contract;

- $150,000 to Davis and Head for violations of the ADA;

- $50,000 to Davis and Head for emotional distress;

- $50,000 to Davis and Head for retaliation;

- $50,000 to Davis and Head for negligence; and

- $480.00 to Davis and Head for having to pay to see a different doctor.

*Id.*

The court observes that an "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).  Here, there is no indication that the amended complaint adopted or referenced the earlier pleading.  Therefore, the sole, operative complaint before the court is the amended complaint, to which the court will apply the arguments raised by the motions below.

On October 13, 2023, the court directed the U.S. Marshal to serve Defendants with summonses and the complaint, as amended.   (Service Order [doc. # 10]).

## II.      The Pending Motions

On December 8, 2023, the City of Monroe (the "City") filed the instant motion to dismiss [doc. # 12] for lack of subject matter and personal jurisdiction, insufficient service of process, and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1), (2), (5)-(6) of the Federal Rules of Civil Procedure.   In their motion, the City argued that it was not served properly under federal or state law, and, therefore, it was subject to dismissal for insufficient service and lack of personal jurisdiction.   The City further argued that, because Davis and Head seek reversal of rulings in juvenile custody proceedings, this court lacks subject matter jurisdiction pursuant to the domestic relations exception to federal jurisdiction.   The City also argued that Davis and Head failed to state a claim for relief against it under 42 U.S.C. § 1983, the ADA, for breach of contract, and for negligence.

On December 8, 2023, Judge Lee filed the instant motion to dismiss [doc. # 16] for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.   She argued that the court lacks subject matter jurisdiction to entertain Davis and Head's claims because they are barred by the *Rooker-Feldman* Doctrine.   Alternatively, she asserted that the court should abstain from hearing Davis and Head's claims under *Younger* Abstention.   Judge Lee further argued that Davis and Head's claims should be dismissed because she enjoys absolute judicial immunity.   In addition, she also asserted that Davis and Head cannot recover damages against her personally for violations of the ADA.   Finally, Judge Lee claimed that, insofar as Davis and Head sought injunctive relief against her under 42 U.S.C. § 1983, they were barred from doing so unless a prior declaratory decree was

violated or where declaratory relief was unavailable.

On December 20, 2023, Brown filed the instant motion to dismiss [doc. # 19] for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.    In her motion, Brown argued that Davis and Head failed to state a claim for relief against her under Title VII because they did not allege that they exhausted administrative remedies before filing suit, and they did not set forth facts to show that Brown was their employer.    Brown further argued that Davis and Head did not have a valid cause of action against her under Louisiana law.

On December 21, 2023, Davis and Head filed a response to the motions to dismiss filed by the City and Judge Lee.    (Pls. Response [doc. # 21]).    They essentially asked the court for additional time to serve the City because any error in service was the fault of the U.S. Marshal, for which they should not bear the consequences.    Furthermore, insofar as the court lacked jurisdiction under the domestic relations exception to federal court jurisdiction, they asked the court to dismiss their claims without prejudice.    Davis and Head explained that they were suing the City because Judge Lee purportedly works for the City.    They reiterated the facts in their complaint, as amended, and asked if there was any way for them to obtain a new judge and a new attorney for their daughter. Davis and Head explained that they each were suing Judge Lee and Brown for $25,000 for retaliation.    They also were suing Judge Lee for $50,000 for negligence for refusing to believe their nurse practitioner and doctor.    Moreover, both Davis and Head were suing the City and Judge Lee for $75,000 for violating the ADA.

On December 28, 2023, Davis and Head filed a response to Brown's motion to dismiss. (Pls. Response [doc. # 24]).    They asserted that Brown violated their civil rights by transgressing the ADA, and, consequently, they asked to add a claim against Brown to recover an additional

$150,000.[2]

On January 12, 2024, the City filed a reply brief that re-urged its arguments in support of dismissal.   (City Reply [doc. # 25]).

Judge Lee and Brown did not file reply briefs and the time to do so has passed.   *See* Notices of Motion Setting [doc. #s 18 & 20].   Accordingly, the matter is ripe.

## Analysis

The pending motions seek dismissal pursuant to several Rule 12(b) sub-paragraphs. Accordingly, the court will consolidate and address the common arguments by type of motion. The court will begin with service and jurisdiction-related issues before proceeding to consider merits-based arguments pertaining to Davis and Head's federal law claims.

## I.   Insufficiency of Service of Process

When service is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service.   *Kitchen v. Walk-On's Bistreaux & Bar*, Civ. Action No. 19-1062, 2020 WL 2404911, at *3 (W.D. La. May 12, 2020) (citing *Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)).   "The Court may consider affidavits or declarations in resolving Rule 12(b)(5) motions."   *Walk-On's*,

---

[2] The Fifth Circuit has recognized that, where, as here, pro se plaintiffs endeavor to allege new facts or theories of recovery in their response to a dispositive motion, the court should consider the response as a motion for leave to amend the complaint under Federal Rule of Civil Procedure 15(a).   *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (response to summary judgment motion) (citations omitted).   Of course, a district court may deny leave to amend if the proposed amendment is futile – even when the plaintiff is entitled to amend as a matter of course.   *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009) (citations omitted).   In the Rule 15 context, an amendment is futile if it "would fail to state a claim for relief upon which relief could be granted."   *Stripling v. Jordan Production Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000).   The undersigned will consider Davis and Head's allegations and claims as expanded upon in their response briefs.   However, the augmented pleadings still do not state a claim for relief.

2020 WL 2404911, at *1 (citations omitted). Without valid service of process, "proceedings against a party are void because a court cannot exercise personal jurisdiction over a defendant unless he was properly served." *Landry v. Garber*, No. 19-0367, 2019 WL 2946149, at *2 (W.D. La. June 21, 2019), *R&R adopted*, No. 19-0367, 2019 WL 2943409 (W.D. La. July 8, 2019) (citing *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc*., 635 F.2d 434, 435 (5th Cir. 1981)); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987).

Here, the City contends that service of process was invalid because it was not made on the proper person. A plaintiff may effect service on a state or local governmental entity by "delivering a copy of the summons and of the complaint to its chief executive officer; or . . . serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." FED. R. CIV. P. 4(j)(2)(A)-(B). Under Louisiana law, service on a political entity such as the City of Monroe can be "made at its office by personal service upon the chief executive officer thereof, or in his absence upon any employee thereof of suitable age and discretion." LA. C. CIV. P. ART. 1265.

In this case, the U.S. Marshal served the City via Kecia Hamilton, who, per the City, is the Chief of Police's secretary and clearly not the City's chief executive officer, i.e., the mayor. Moreover, there is no indication that the mayor was absent when service was attempted. Therefore, there is no predicate basis for serving the City via another employee under Article 1265.

Under Federal Rule of Civil Procedure 4(c)(1), "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." FED. R. CIV. P. 4(c)(1). Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90

days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."   FED. R. CIV. P. 4(m).  However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."   *Id.*   Good cause "requires 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'"   *Gartin v. Par Pharm. Companies, Inc*., 289 Fed. App'x 688, 692 (5th Cir. 2008) (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)).   Furthermore, "[a] litigant's pro se status neither excuses h[er] failure to effect service nor excuses h[er] for lack of knowledge of the Rules of Civil Procedure."   *Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013) (citations omitted).

Here, Davis and Head essentially ask for further opportunity to serve the City because it was the U.S. Marshal who incorrectly served the City.[3]   Moreover, plaintiffs, like Head and Davis, who are *in forma pauperis*, are entitled to rely on service by the U.S. Marshal and should not be penalized for a deputy marshal's failure to properly effect service, where such failure is through no fault of the litigants.   *Lindsey v. U.S. R.R. Ret. Bd.*, 101 F.3d 444, 447 (5th Cir. 1996); *Thomas v. New Leaders for New Sch.*, 278 F.R.D. 347, 352 (E.D. La. 2011).

The courts are authorized to construe a motion to dismiss pursuant to Rule 12(b)(5) as a motion to quash service.   *Thomas v. New Leaders for New Sch.*, 278 F.R.D. at 352.   In fact, "where there is 'a reasonable prospect that plaintiff ultimately will be able to serve defendant properly,' the proper course of action is to quash service and permit a plaintiff another opportunity to complete service rather than dismiss the case."   *Id*. (citing Charles Alan Wright &

---

[3]  Albeit, it appears that Davis and Head provided an incorrect address for the City on the USM-285 form.   *See* doc. # 11.

Arthur R. Miller, 5B *Federal Practice and Procedure* § 1354 (3d ed. 2004)).

Upon consideration, the Court finds good cause for Davis and Head's failure to timely serve the City.   If given another opportunity, there is a reasonable prospect that, with the U.S. Marshal's assistance**,** they could properly serve the City.   Accordingly, in lieu of dismissal for insufficient service, the prior service attempt is quashed.[4]

## II.    Lack of Personal Jurisdiction

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."   *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350; 119 S.Ct. 1322, 1327 (1999) (citation omitted).   Similarly, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."   *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104; 108 S.Ct. 404, 409 (1987).

The City's motion to dismiss for lack of personal jurisdiction is premised upon Davis and Head's failure to perfect proper service.   However, because the undersigned has quashed service instead of recommending dismissal, *see* discussion, *supra,* the necessary predicate for the City's motion to dismiss for lack of personal jurisdiction remains fluid and uncertain.   Thus, the motion to dismiss for lack of personal jurisdiction is premature and should be denied on that basis.[5]

## III.    Subject Matter Jurisdiction

It is manifest that this court enjoys subject matter jurisdiction to entertain this matter via

---

[4] Nonetheless, because the undersigned is recommending that Davis and Head's claims against the City be dismissed on the merits, *see* discussion, *infra*, the court will not order another service attempt.

[5] Ultimately, the Rule 12(b)(2) motion is superfluous.   *See* discussion, *infra*.

federal question, 28 U.S.C. § 1331.   Under certain circumstances, however, the court must decline to exercise otherwise extant jurisdiction.   For example, if the *Rooker-Feldman* doctrine applies, the court lacks subject-matter jurisdiction over the dispute.   *Jones v. Louisiana*, No. 15-1816, 2016 WL 5720623, at *2, n.2 (W.D. La. Sept. 29, 2016) (citing *inter alia, Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994).   Also, a party's invocation of Eleventh Amendment immunity is analyzed as a challenge to the federal court's exercise of federal subject matter jurisdiction.   *Mahogany v. Louisiana State Supreme Court*, 262 Fed. App'x. 636 (5th Cir. 2008) (citations omitted); *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("Sovereign immunity is indeed a jurisdictional bar.").

a)    Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)).   The party seeking to invoke jurisdiction bears the burden of demonstrating its existence.   *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).   "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."   *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

"A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir. 2016) (citations and internal quotation marks omitted).

b)    *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine "holds that inferior federal courts do not have the power to modify or reverse state court judgments."  *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir.2004) (citation omitted).   The doctrine comprises four elements:   "(1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment."  *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017) (citations omitted).   The doctrine, however, applies only to "final judgment[s] rendered by a state's court of last resort."  *Id*.   (citation omitted).

Here, there are no facts to suggest that there was a *final* judgment in the pending city court action pertaining to the minor, E.D., that Davis and Head are seeking to overturn. Accordingly, by its terms, *Rooker-Feldman* is inapplicable.   While there appears to be a final judgment terminating the parental rights that Thomas Head had over I.B., there is no indication that it was issued by the state's court of last resort.[6]

c)    Domestic Relations Exception

Under the domestic-relations exception, federal courts lack jurisdiction to "issue divorce, alimony, and child custody decrees."  *Estate of Merkel v. Pollard*, 354 Fed. Appx. 88, 92 (5th Cir. 2009) (citation omitted).   This exception to federal jurisdiction is founded on "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing

---

[6] *See* Feb. 25, 2022 Judgment of Termination of Parental Rights, *In Re:   J.B. and I.B.* Docket No. 2020J00187 (Monroe City Court); M/Dismiss, Exh. 1 [doc. # 19-2].

judicial supervision by the state, and the problem of congested dockets in federal courts."
*Rogers v. Janzen*, 891 F.2d 95, 97–98 (5th Cir. 1989) (citation omitted).

However, the domestic relations exception stems from the diversity jurisdiction statute and, thus, has no application where there exists an independent basis for federal jurisdiction. *United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997).   Here, Davis and Head assert claims under the ADA, a federal statute that confers federal question jurisdiction, 28 U.S.C. § 1331.   Therefore, the domestic relations exception presents no bar to the suit.   *Bailey,* 115 F.3d at 1231.

d)     <u>Eleventh Amendment Immunity</u>

Judge Lee seeks dismissal of Davis and Head's state law claims for breach of contract and negligence, on the basis of Eleventh Amendment immunity.   Citing *Pennhurst State Sch. & Hosp. v. Halderman*, Judge Lee argues that the Eleventh Amendment bars federal courts from granting injunctive relief against her for violations of Louisiana state law.[7]   *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106; 104 S.Ct. 900, 911 (1984).

In *Pennhurst State Sch. & Hosp.*, however, the state actors were sued in their official capacities, not their individual or personal capacities.   *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 109, n.17.   Sovereign immunity "does not erect a barrier against suits to impose individual and personal liability."   *Lewis v. Clarke*, 581 U.S. 155, 163; 137 S.Ct. 1285, 1291 (2017).   In fact, the "Eleventh Amendment does not come into play in personal capacity suits." *Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir. 1999) (citations omitted); *Reyes v. Sazan*, 168 F.3d 158, 162 (5th Cir. 1999) (Eleventh Amendment not applicable to claim under

---

[7]   There is no indication that Judge Lee invoked Eleventh Amendment immunity as to federal law claims.

LA. CIV. CODE ART. 2315 because the officers were sued personally).

Davis and Head did not allege that they sued Judge Lee in her official capacity.   Insofar as they *intended* to sue Judge Lee, in her official capacity, for violations of state law, the court should decline to exercise supplemental jurisdiction over those claims.   *See* discussion, *infra*.

e)    <u>*Younger* Abstention</u>

Invoking the *Younger* abstention doctrine, Judge Lee urges the court to abstain from hearing any claims brought by Davis and Head that challenge orders and judgments not yet final in the underlying city court proceedings or that interfere with ongoing city court domestic proceedings.

Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971), "federal courts must refrain from considering requests for injunctive or declaratory relief based upon constitutional challenges to ongoing state civil proceedings."   *Price v. Porter*, 351 Fed. App'x. 925, 927 (5th Cir. 2009) (citation omitted).[8]   Courts apply a three-prong test for determining whether the *Younger* abstention doctrine is applicable:   "(1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges."   *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citation omitted).   Once this test is satisfied, then the federal court is obliged to abstain, unless:

> (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made

---

[8]  "Although *Younger* abstention originally applied only to criminal prosecutions, it also applies when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."   *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008) (internal citations and quotation marks omitted).

to apply it," or (3) application of the doctrine was waived.

*Id*. (citations omitted).

Applying the foregoing considerations here, the court observes that Davis and Head principally seek an award of monetary damages, not injunctive or declaratory relief as contemplated by *Younger*.   Nevertheless, with regard to their request for I.B.'s return to their custody, there is no indication that the foregoing proceeding remains "ongoing."   Even if it were, Davis and Head seek I.B.'s return because of an alleged breach of contract, not on constitutional grounds.   Likewise, insofar as Davis and Head seek injunctive or declaratory relief as to E.D., they do so on the basis of a violation of the ADA and/or state law, not a violation of the U.S. Constitution.   Accordingly, by its terms, *Younger* abstention is inapplicable.

## II.    Merits-Related Arguments

### a)    Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."   Fed. R. Civ. P. 8(a)(2).   Circumstances constituting fraud or mistake, however, must be alleged with particularity.   Fed. R. Civ. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).   A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.   *See*

*Iqbal*, 556 U.S. at 678; 129 S.Ct. at 1949.   Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.   *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.   Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.   *Twombly*, 550 U.S. at 555; 127 S.Ct. at 1965.   A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.   *Id*.   "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."   *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.* (citation omitted).   A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.   *Twombly*, 550 U.S. at 556; 127 S.Ct. at 1965.   Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.   *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.   *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).   However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).   Because filings in other cases are public records, the court may take judicial notice of them.   *See Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 Fed. App'x. 617, 618 n.1 (5th Cir. 2015) (citations omitted). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of

the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

    b)    <u>Judicial Immunity</u>

Judge Lee contends that she is entitled to absolute judicial immunity.[9]  It is well settled that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion."  *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).  "A judge is absolutely immune from liability for h[er] judicial acts even if h[er] exercise of authority is flawed by the commission of grave procedural errors."  *Stump v. Sparkman*, 435 U.S. 349, 359; 98 S.Ct. 1099, 1106 (1978).  Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages.  *Mireles v. Waco*, 502 U.S. 9, 11; 112 S.Ct. 286 (1991); *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005).  Thus, immunity applies to equal protection and ADA claims.  *Hudson v. Am. Arbitration Ass'n, Inc.*, 101 Fed. App'x. 947 (5th Cir. 2004) (equal protection); *Dean v. Mississippi Bd. of Bar Admissions*, Civ. Action No. 06-0046, 2010 WL 11681649, at *5 (S.D. Miss. Jan. 7, 2010), *aff'd,* 394 Fed. App'x. 172 (5th Cir. 2010) (ADA).

Further,

[a]lthough unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in h[er], shall be free to act upon h[er] own convictions, without apprehension of personal consequences to h[er]self.

*Mireles,* 502 U.S. at 10, 112 S.Ct. 286 (citation and internal quotation marks omitted).

---

[9]  The defense of absolute judicial immunity is properly raised via a Rule 12(b)(6) motion to dismiss.  *Brunson v. Brown*, Civ. Action No. 23-3109, 2023 WL 6382602, at *2 (E.D. La. Sept. 29, 2023) (citation omitted).

Judicial immunity is a matter of policy and is necessary because, as aptly demonstrated by the case *sub judice*, a judge   ". . . should not have to fear that unsatisfied litigants may hound h[er] with litigation charging malice or corruption [and] [i]mposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation."   *Pierson v. Ray*, 386 U.S. 547; 554, 87 S.Ct. 1213, 1218 (1967).   Consequently, judicial immunity cannot be overcome even by allegations of bad faith or malice.   *Mireles*, 502 U.S. at 11; 112 S.Ct. at 288 (citations omitted); *Pierson,* 386 U.S., at 554, 87 S.Ct., at 1218 (immunity "applies even when the judge is accused of acting maliciously and corruptly."

In determining whether a judge is entitled to immunity, it is the judge's actions alone, not intent, that must be considered.   *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). Judicial immunity can be defeated only by showing that the judge's actions were of a non-judicial nature or that she acted in the complete absence of jurisdiction.   *Mireles*, 502 U.S. at 11-12; 112 S.Ct. at 288.   Courts use the "functional" approach in deciding whether an act is judicial for purposes of immunity.   *Cleavinger v. Saxner*, 474 U.S. 193, 201-02, 106 S.Ct. 496 (1985).   The issue of "immunity analysis rests on the status of the defendant.   Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official."   *Id.*   In deciding whether absolute judicial immunity applies, a court should consider the nature of the act taken, whether it is a function normally performed by a judge, and the expectations of the parties, i.e., whether they dealt with the judge in her judicial capacity.   *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099 (1978). The Fifth Circuit has identified four factors pertinent to this issue:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official

capacity.

*Malina*, 994 F.2d at 1124 (citation omitted).   These factors must be broadly construed in favor

of immunity. *Id.*

As recounted above, Davis and Head's allegations against Judge Lee pertain to her

handling of E.D.'s custody proceedings, including:

- her decision to obtain information from Davis and Head's medical providers regarding their treatment for substance abuse with a prescription for Suboxone;

- Judge Lee's improper questioning of Davis and Head's medical providers at a hearing(s);

- Judge Lee's decision to require Davis and Head to obtain a second medical opinion;

- her failure to promptly return custody of E.D. to Davis and Head on a permanent basis; and

- her alleged retaliatory decision to postpone a hearing in the matter.

In other words, the actions challenged by Davis and Head plainly represent normal judicial

functions, that occurred in or near the courtroom, in a case pending before the court, and which

arose out of a visit to the judge in her capacity as such.

Furthermore, there is no suggestion that Judge Lee acted in the complete absence of

jurisdiction.   Louisiana law vests city courts with original juvenile jurisdiction over their

territorial jurisdiction, which extends to adult parties.   *See* LA. CHILD. CODE ANN. ARTS. 302-

309; *State in Interest of L.P.*, No. 2019-1023, *12 (La. App. 1st Cir. July 8, 2020) (unpubl.) (a

court exercising juvenile jurisdiction shall have exclusive original jurisdiction over child in need

custody proceedings).   Is clear that Judge Lee had, at minimum, "some subject-matter

jurisdiction," which is all that is required for immunity.   *Malina*, 994 F.2d at 1125.

In sum, upon consideration, the Court finds that Judge Lee is entitled to absolute judicial

immunity for her actions in the child custody proceedings that form the basis for the instant suit against her.  *See Roberson v. Dep't of Soc. Servs.*, Civ. Action No. 23-4022, 2023 WL 10406019, at *14 (E.D. La. Dec. 12, 2023), *R&R adopted,* 2024 WL 1116221 (E.D. La. Mar. 14, 2024) (plaintiff's claims that judge acted improperly in a custody proceeding are barred by judicial immunity).[10]

    c)    <u>Discrimination under Title II of the ADA</u>

The City contends that Davis and Head's pleading(s) fails to state a claim for relief under Title II of the ADA.[11]  Title II of the ADA provides that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A "public entity" contemplates "any State or local government," which, according to the accompanying regulations,[12] includes the legislative and judicial branches of the State and local governments.  42 U.S.C. § 12131; 28 C.F.R. pt. 35, App. B, § 35.102.  Moreover, the U.S. Department of Justice ("DOJ") and the Department of Health and Human Services ("DHH") have taken the position that Title II's prohibition on discrimination in services, programs, or activities of public entities "extend[s] to child welfare hearings, custody hearings, and proceedings to terminate parental rights."[13]

---

[10] Even if Judge Lee were not entitled to judicial immunity, Davis and Head fail to state a claim against her under federal law.  *See* discussion, *infra*.

[11] The City's argument applies with equal force to Davis and Head's ADA claims against Judge Lee and Brown.   Where, as here, a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants.  *See Lewis v. Lynn,* 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (citations omitted)

[12] Title II directs the Attorney General to promulgate regulations to effectuate the statute's purpose.  *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citing 42 U.S.C. § 12134(a)).

[13] *Doe v. State of Tennessee*, Civ. Action No. 18-0471, 2022 WL 3365062, at *14 (M.D. Tenn.

Title II of the ADA creates a private right of action against a public entity for monetary and equitable relief. *Windham v. Harris Cnty., Texas*, 875 F.3d 229, 234–35 (5th Cir. 2017) (citing 42 U.S.C. § 12133). To show discrimination under Title II of the ADA, a plaintiff must prove

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Valentine v. Collier*, 993 F.3d 270, 289 (5th Cir. 2021) (citation omitted).[14]

A qualifying disability under the ADA is one which "substantially limit[s] either a major life activity or the operation of a major bodily function." *Id*. (citation omitted). "Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA." *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002) (citation omitted). Further, the ADA specifically provides that,

> [n]othing in subsection (a) shall be construed to exclude as an individual with a disability an individual who—
>
> **(1)** has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

---

Aug. 15, 2022), *R&R adopted*, 2023 WL 2699970 (M.D. Tenn. Mar. 29, 2023) (citing U.S. Dep't of Health and Hum. Servs., Off. for Civ. Rights Admin. for Child. and Families & U.S. Dep't of Just., Civ. Rights Div. Disability Rights Section, *Protecting the Rights of Parents & Prospective Parents with Disabilities: Technical Assistance for State and Local Child Welfare Agencies and Courts under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act* at 3 (Aug. 2015), https://www.hhs.gov/sites/default/files/disability.pdf.ation omitted) ("DOJ/HHS Tech. Assist.").

[14] Further, "to recover compensatory damages for disability discrimination under Title II of the ADA, a plaintiff must also show that the discrimination was "intentional" . . ." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.5 (5th Cir. 2015). Also, as this court recognized previously, there is no individual liability for violations of Title II of the ADA. *See Hay v. Thaler*, 470 Fed. App'x. 411, 417 n.19 (5th Cir. 2012) (affirming dismissal of claims against defendants in their individual capacities).

**(2)** is participating in a supervised rehabilitation program and is no longer engaging in such use; or

**(3)** is erroneously regarded as engaging in such use, but is not engaging in such use . . .

42 U.S.C. § 12210(b).

Here, Davis and Head allege that they were diagnosed with Opioid Use Disorder and take Suboxone pursuant to a Medication Assisted Treatment plan.   In other words, they are qualified individuals with a disability as contemplated by the ADA.   They further contend that Judge Lee is discriminating against them on the basis of their disability by inquiring into their treatment for substance addiction before rendering a decision regarding E.D.'s permanent custody.

According to the DOJ and the HHS, however, the two underlying principles fundamental to Title II of the ADA are individualized treatment and full and equal opportunity.   (DOJ/HHS Tech. Assist., pg. 4).   Thus, "individuals with disabilities must be treated on a case-by-case basis consistent with the facts and objective evidence," rather than on the basis of generalizations or stereotypes.   *Id*.   Further, "[i]ndividuals with disabilities must be provided opportunities to benefit from or participate in child welfare programs, services, and activities that are equal to those extended to individuals without disabilities."   *Id*.

In addition, the DOJ and the HHS recognize that,

[u]nder Title II of the ADA . . ., in some cases, a parent or prospective parent with a disability may not be appropriate for child placement because he or she poses a significant risk to the health or safety of the child that cannot be eliminated by a reasonable modification.   This exception is consistent with the obligations of child welfare agencies and courts to ensure the safety of children. However, . . . the ADA . . . require[s] that decisions about child safety and whether a parent or prospective parent represents a threat to safety must be based on an individualized assessment and objective facts, including the nature, duration, and severity of the risk to the child, and the probability that the potential injury to the child will actually occur . . . . A public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities, but they may not be based on

stereotypes or generalizations about persons with disabilities.

*Id.* (internal citations omitted).

The foregoing guidance parallels 28 C.F.R. § 35.139, which provides that,

(a) This part does not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others.

(b) In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 35.139.

In this case, Davis and Head take issue with Judge Lee's decisions to obtain testimony from their medical providers regarding their prescription treatment program and to send them for an additional medical evaluation prior to ruling on E.D.'s permanent custody.   However, there is no suggestion that Judge Lee acted on the basis of improper generalizations or stereotypes associated with individuals in drug treatment programs.   To the contrary, by Davis and Head's own account, Judge Lee's actions were consistent with her obligation to ensure the health and safety of E.D. by making an individualized assessment of the effects of Davis and Head's condition based on testimony from their own medical providers, as well as an evaluation conducted by an independent medical source.   Under the ADA's implementing regulations, the court is authorized to consider whether a qualified individual poses a direct threat to the health or safety of others.   28 C.F.R. § 35.139.   Given the vulnerability of minor children, the judge would be remiss if she failed to consider, on an individualized basis, the effects of a prescribed treatment program and how that treatment regimen manifests itself in the specific individual's

ability to care for a child.   Ultimately, a court's consideration of a plaintiff's disability in determining custody "standing alone, is not a violation of the ADA."   *Doe*, 2022 WL 3365062, at *15–16 (quoted source omitted).

By this lawsuit, Davis and Head essentially would have the ADA usurp a judge's duty to ensure the safety and wellbeing of minor children when making custody decisions.   At the risk of repetition, however, Title II of the ADA requires only an individualized assessment and full and equal opportunity.   Davis and Head do not allege facts to show that Judge Lee deviated from that standard.   Accordingly, they fail to allege that they were victims of impermissible discrimination on account of their disability.   *See Doe*, 2022 WL 3365062, at *16; *McCalley v. UT Sw. Med. Ctr.*, Civ. Action No. 20-3196, 2021 WL 955272, at *10–11 (N.D. Tex. Feb. 24, 2021), *R&R adopted,* 2021 WL 950660 (N.D. Tex. Mar. 12, 2021) (alleging that a defendant has violated the ADA is not enough to allege a plausible claim).

d)     ADA Retaliation

Davis and Head further contend that Judge Lee and attorney Brown retaliated against them by postponing a hearing pertaining to E.D.'s permanent custody.   They also allege that DCFS is retaliating against them by threatening to open a case against them for their as-then unborn child.

Title V of the ADA protects individuals from retaliation for opposing any act or practice that is prohibited by the ADA's other titles.   42 U.S.C. § 12203(c); *Joyce v. Texas*, Civ. Action No. 20-0145, 2023 WL 6020728, at *17 (N.D. Tex. Jan. 25, 2023).   Title V provides that, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

chapter."   42 U.S.C § 12203(a).[15]

A claim of unlawful retaliation under the ADA requires plaintiffs to show that (1) they engaged in an activity protected by the ADA, (2) they suffered an adverse action, and (3) there is a causal connection between the protected act and the adverse action.   *Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 Fed. App'x. 295, 298 (5th Cir. 2012) (citation omitted); *see also Wren v. Midwestern State Univ.*, Civ. Action No. 18-0060, 2019 WL 3099408, at *12 (N.D. Tex. June 25, 2019), *R&R adopted*, 2019 WL 3081849 (N.D. Tex. July 15, 2019) (citation omitted); *Joyce*, 2023 WL 6020728, at *17.

Here, Davis and Head allege that their hearing date was postponed (the adverse action) because Judge Lee and attorney Elizabeth Brown knew that Davis and Head had filed suit against them (the protected activity).   Clearly, filing suit to uphold rights under the ADA represents a protected activity.   However, the undersigned is not persuaded that a three-month postponement of a hearing pertaining to permanent child custody constitutes a materially adverse action that would dissuade a reasonable parent from lodging a charge of discrimination against the court – when, as here, the child already is in the parent's temporary custody.   *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53; 126 S.Ct. 2405, 2415 (2006) (discussing an adverse action in the context of Title VII of the Civil Rights Act of 1964).

Even if it were, Davis and Head fail to show any causal connection between the protected act and the adverse action.   The September 19, 2023 hearing was continued no later than the date of the hearing itself, but Judge Lee and Brown were not served with summonses in this suit

---

[15]  It also states that, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."   42 U.S.C. § 12203(b).

until November 17, 2023, i.e., two months *after* the originally scheduled hearing.   *See* Service Returns [doc. # 11].   Moreover, Davis and Head do not set forth any facts to suggest that Judge Lee and Brown were made aware of this suit prior to the November 17 service.[16]

As to Davis and Head's allegation that the DCFS retaliated against them by threatening to open a new case for their as-then unborn child, the Court observes that DCFS is not a party to this suit.   Moreover, Davis and Head have not set forth facts to show that the DCFS was aware of this lawsuit or that it even would have a motive to retaliate against them for filing suit against unrelated parties.[17]

Accordingly, Davis and Head fail to state a claim for retaliation against Judge Lee, Elizabeth Brown, and the City (at least insofar as the City may be held responsible for Judge Lee's actions).[18]

e)    42 U.S.C. § 1983

To the extent that Davis and Lee intended to assert a claim against one or more defendants under 42 U.S.C. § 1983, the City and Judge Lee contend that their effort falls short.

---

[16] Their statement that Judge Lee and Brown "knew" that they were suing them is conclusory and need not be credited in response to a motion to dismiss.   *Iqbal*, 556 U.S. at 686; 129 S.Ct. at 1954.

[17] Davis and Head stated in their amended complaint that they would like to "press charges" against DCFS for harassment.   However, Davis and Head do not detail any legal basis for a harassment charge against DCFS.   Insofar as they intended to press criminal charges against the DCFS, private citizens do not have a right to compel criminal prosecutions; rather, the decision whether to file criminal charges lies within the discretion of the prosecutor.   *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (citations omitted).

[18] The City contends that the office of city court judge is a state office for which it is not responsible.   *See, e.g.*, *Barnum v. City of New Orleans,* 2005 WL 3541068, *2 (E.D. La. 2005) (city court judges in Louisiana are considered state, not municipal officers).   State law, however, dictates that salaries for the judges of the City Court of Monroe shall be paid by both the State and the City.   LA. R.S. § 13:1874.

However, Davis and Head do not mention a § 1983 claim in their complaint, as amended, or in their response briefs.   Moreover, any intention to assert such a claim would be futile.

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).   Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.   *Id*.   "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."   *Id*.   (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, a plaintiff must plead that some person has deprived her of a federal right, and that the same person acted under color of state or territorial law.   *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation omitted).   However, judicial immunity bars any would-be § 1983 claim against Judge Lee. *Turner v. Thomas*, Civ. Action No. 16-1001, 2016 WL 7638296, at *3 (W.D. La. Nov. 22, 2016), *R&R adopted,* 2017 WL 53281 (W.D. La. Jan. 3, 2017); *see* discussion, *supra*.   Furthermore, by its terms, § 1983 precludes injunctive relief against judicial officers.   42 U.S.C. § 1983.[19]

To establish municipal liability under § 1983 against the City, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."   *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir. 2022) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978).   "A municipality is almost

---

[19]   The court notes that Davis and Head asked this Court to reassign E.D.'s custody proceedings to a different judge.   However, they did not include any legal basis to support their request. Moreover, any such injunctive relief is barred by § 1983.

never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted).   Further, municipalities are not liable under § 1983 on the theory of *respondeat superior*.   *Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

However, the Fifth Circuit has "repeatedly held . . . that a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker."   *Johnson v. Moore*, 958 F.2d 92 (5th Cir. 1992).   Here, Davis and Head's complaints all pertain to Judge Lee's actions made in her judicial capacity.   *See* discussion, *supra*.   Accordingly, the City cannot be held liable under § 1983 for the actions of Judge Lee.

Finally, the undersigned further notes that Davis and Head cannot assert a § 1983 claim against attorney Brown because she is not a state actor.   To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937; 102 S.Ct. 2744, 2753–54 (1982).[20]   Thus, private entities are not generally considered state actors. *Meade v. Dillard Dept. Stores*, 275 F.3d 43, 43 (5th Cir. 2001).   Moreover, court-appointed lawyers are not state actors for § 1983 purposes when they are performing a lawyer's traditional functions as counsel.   *Robinson v. Corbett*, 735 F. App'x 137 (5th Cir. 2018) (citing, *inter alia*, *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988).

Nonetheless, "a private individual may act under color of law in certain circumstances,

---

[20] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."   *West v. Atkins*, 487 U.S. 42; 108 S.Ct. 2250, 2255 (1988) (citations and internal quotation marks omitted).

such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (citations omitted).  In fact, private parties conspiring with a judge will be deemed to be acting under color of state law even if the judge is immune from damages liability.  *Dennis v. Sparks*, 449 U.S. 24, 27–28; 101 S.Ct. 183, 186 (1980).  However, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."  *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 353–54 (5th Cir. 2003) (citation omitted).

Insofar as it may be inferred from Davis and Head's allegations that there was some sort of collusion between Judge Lee and attorney Brown, the allegations fall far short of setting forth facts to show that there was an agreement between defendants to violate their civil rights.  *See Gordon v. Greene*, Civ. Action No. 21-0067, 2023 WL 2682123, at *14 (M.D. La. Mar. 29, 2023) (citing *Montgomery v. Walton*, 759 Fed. App'x. 312, 314–15 (5th Cir. 2019)).

Here, there is no suggestion that Brown did anything other than represent the interests of the minor child, E.D., whom she was appointed to represent.   Accordingly, the court necessarily concludes that this private defendant is not state actor subject to liability under § 1983.

     f)    <u>Title VII</u>

Brown seeks dismissal of Davis and Head's claims purportedly asserted under Section 706(f) of the Civil Rights Act of 1964 (better known as Title VII), no doubt because that is the title of the form complaint that they used to file suit.  *See* Compl. [doc. # 1].   Specifically, Brown seeks dismissal because she is not their "employer" and because Davis and Head did not exhaust administrative remedies prior to filing suit.

Upon review, however, it is unlikely that Davis and Head intended to assert a Title VII claim against Brown or anyone else in this suit.   Rather, it appears that they simply used an incorrect form.

Even if they had intended to prosecute a Title VII claim, Brown correctly observed that only employers may be liable under Title VII. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (citations omitted). Stated differently, "title VII does not permit the imposition of liability upon individuals unless they meet title VII's definition of 'employer.'" *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994).

Here, at minimum, there is no suggestion that Brown, or any other defendant, was Davis and Head's employer. Therefore, Davis and Head's Title VII "claim" is subject to dismissal.

## III.    Remaining State Law Claims

When, as recommended here, all claims that conferred federal subject matter jurisdiction are dismissed,[21] the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367. In fact, this is the general rule. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). The undersigned further observes that interpretation and application of Louisiana's breach of contract and attorney conflicts provisions, together with any state law tort claims, remain issues within the particular province and expertise of the state courts. Accordingly, the twin interests of comity and efficiency dictate that the state law claims be dismissed without prejudice. 28 U.S.C. § 1367(c).

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations in Davis and Head's pleadings. The remainder of the complaint(s), even considering Davis and Head's responses to the pending motions as a proposed amendment, contain no allegations sufficient to confer plausibility upon their federal law claims. Under these circumstances, there

---

[21] With Louisiana citizens on both sides of the jurisdictional equation, the court does not discern a basis for the exercise of diversity jurisdiction, 28 U.S.C. § 1332.

is no reasonable expectation that discovery will reveal evidence to support the missing elements of the claim(s).   *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.   Accordingly,

IT IS RECOMMENDED that the motions to dismiss for failure to state a claim upon which can be granted filed by Defendants, the City of Monroe [doc. # 12], Judge Tammy Lee [doc. # 16] and Elizabeth Brown [doc. # 19] be GRANTED IN PART, and that Plaintiffs Jessica Davis and Thomas Head's federal law claims only be DISMISSED WITH PREJUDICE.   FED. R. CIV. P. 12(b)(6).

IT IS FURTHER RECOMMENDED that the motions to dismiss [doc. #s 12, 16, & 19] otherwise be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiffs' remaining state law claims be DISMISSED, without prejudice.   28 U.S.C. § 1367(c).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 12th day of June, 2024.

_____

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE